UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE,<br>    *Plaintiff*, | )<br>)<br>) |
| v. | )    3:25-CV-787 (OAW) |
| YALE UNIVERSITY, et al,<br>    *Defendants*. | )<br>)<br>)<br>)<br>) |

## RULING GRANTING IN PART MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the court upon Plaintiff's Motion to Revise Preliminary Injunction Ruling ("Motion"). *See* ECF No. 92. The court has reviewed the Motion and the record in this matter[1] and is thoroughly advised in the premises. For the following reasons, the Motion is **DENIED.**

As a preliminary matter, the court must determine the appropriate standard to apply to the Motion. Plaintiff purports to seek a "revision" of the court's denial of her request for a preliminary injunction (hereinafter, the "Ruling") pursuant to Federal Rule of Civil Procedure 54(b) (dealing with the certification of partial judgments for appeal) and Local Rule 7(c) (dealing with reconsideration). These rules have similar but distinct standards of review, though, and Plaintiff does not specify which arguments she presents

---

[1] Defendants did file a response, *see* ECF No. 94, but only to notify the court that they decline to make any substantive arguments, and so the court will not refer to it herein. Plaintiff also has filed several motions to seal, *see* ECF Nos. 93 and 101, upon which the court will defer ruling given that its order regarding Plaintiff's pseudonymity currently is being appealed to the United States Court of Appeals for the Second Circuit. Those documents currently filed under seal may so remain until resolution of the appeal. The one publicly-available document which Plaintiff seeks to seal, ECF No. 97, is redacted such that the court finds no need to seal it at this point.

pursuant to which rule. In fact, she only recounts the standard for reconsideration. Given that Rule 54(b) deals with partial judgments, *see Colvin v. Keen*, 900 F.3d 63, 71 (2d Cir. 2018) ("A decision under Rule 54(b) is one that adjudicates claims and determines the rights and liabilities of parties."), and the Ruling might only be considered a partial judgment with respect to the one claim it dismissed for lack of subject matter jurisdiction, and then only if the court had designated it as immediately appealable (which it did not do and was not asked to do by any party), the court construes the motion as a request for reconsideration.[2]

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances . . . ." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). Reconsideration will be granted only where a court has overlooked controlling decisions or data. D. Conn. L. Civ. R. 7(c)(1). Plaintiff contends that reconsideration is warranted because the court made a number of errors of fact and law in the Ruling. The court disagrees, finding the Motion to be an improper attempt to relitigate issues already argued and decided. Nevertheless, the court will address Plaintiff's several arguments seriatim.[3]

The court turns first to Plaintiff's reproof with the dismissal of her grievance-procedure claim. She challenges that dismissal on both procedural and substantive

---

[2] The court also notes that revisions may only be made pursuant to Rule 54(b) upon "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Colvin*, 900 F.3d 63, 71 (2d Cir. 2018) (quoting *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)). Plaintiff does not argue that any of these circumstances are present here, so if the court were to proceed under Rule 54(b), the Motion would summarily be denied.

[3] The court presented an exhaustive recitation of the record facts in the Ruling and so will not do the same here; familiarity with the factual background is assumed for the purpose of this order.

grounds. As to the former, she argues that she was entitled to notice and a chance to respond before such action under Rule 56(f) and *Thomas v. Scully*, 943 F.2d 259 (2d Cir. 1991). Again, the court questions Plaintiff's authority, as Rule 56 deals with summary judgment, and Rule 56(f) deals more specifically with a court granting summary judgment sua sponte, which was not what happened here. And *Thomas* addresses a sua sponte dismissal for failure to state a claim, which also was not what happened here. Rather, the court upheld its obligation under Article III of the Constitution of the United States of America to refrain from hearing any claims over which it does not have subject matter jurisdiction. And it is within the court's authority to dismiss a claim *sua sponte*, even without notice and an opportunity to respond, where "it is unmistakably clear that the court lacks jurisdiction." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) (quoting *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999)). The court finds that dismissal of the grievance-procedure claim was a proper exercise of that authority.

      Plaintiff alleged that Yale's grievance procedure is deficient as a matter of law because the Office of Institutional Equity and Accessibility ("OIEA") lacks authority to enforce its appellate decisions upon Student Accessibility Services ("SAS"). She further alleged in her complaint and again in her initial motion for injunctive relief that OIEA, through Mr. Thomas, had "overturned" SAS's determination that Plaintiff's requested accommodation was not warranted, but SAS refused to honor the appellate decision and denied her any accommodation despite OIEA's recommendation to revisit the request. ECF No. 1 at 18; *see also* ECF No. 32 at 29–30 (stating that SAS, through Defendant McKeown, "defied" OIEA's directive). Plaintiff claimed that she was denied a satisfactory grievance procedure because OIEA could not force SAS to follow its recommendation.

But these allegations are not borne out by the complete record. Rather, the documentary evidence submitted to the docket and the testimony elicited at an evidentiary hearing held in connection with the motion for a preliminary injunction shows that Defendant McKeown accepted Mr. Thomas's recommendation and made further inquiry as he had specified, but still found the accommodation to be unnecessary. Both Defendant McKeown and Mr. Thomas submitted affidavits in which they aver that following the reinvestigation, Mr. Thomas confirmed to Defendant McKeown that she had done all that he had recommended she do. ECF No. 43-4 ¶ 49; ECF No. 43-3 ¶ 20. Thus, while it is undisputed that OIEA has no enforcement authority over SAS, the denial of Plaintiff's accommodation request did not result from that absence of authority. Because SAS voluntarily complied with OIEA's recommendation, Plaintiff cannot trace any injury back to the grievance process itself. Consequently, she clearly and unmistakably does not have standing to bring this claim, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020), and the court does not have the authority even to hear it, much less enter a preliminary injunction to further investigate it.

Of course, Plaintiff could move to amend her pleading, though the court notes that the Motion revises the grievance-procedure claim such that it almost appears an amendment in itself, and still the court is not persuaded that Plaintiff has cured the standing deficiency. Specifically, Plaintiff now claims (for the first time) that (1) the lack of an adequate grievance process is itself an injury, and (2) the deficiency actually lies in Defendant McKeown's substandard reengagement with the accommodation request. With respect to the former, Plaintiff has cited no authority for this new proposition. And the latter, again, simply is unsupported by the record. While initially it appeared that the

inaccuracy of Plaintiff's factual allegations arose from honest error,[4] but it is difficult to assign innocent motives to Plaintiff's new narrative, which seems more of an attempt to fabricate support for this claim by misrepresenting the facts, citing testimony out of context, and ignoring much of the factual record.  Plaintiff now alleges that Defendant McKeown did not voluntarily comply with Mr. Thomas's recommendation because Mr. Thomas testified that simply sending a denial email would not qualify as engaging in the interactive process, and because Defendant McKeown sent Plaintiff another denial email without reinterviewing her, Plaintiff concludes that Defendant McKeown did not reengage as Mr. Thomas had recommended.  But the court cannot accept this conclusion where it is based upon a flawed narrative which completely ignores unrefuted statements by both Mr. Thomas and Defendant McKeown that they conferred and agreed that Defendant McKeown had adequately implemented Mr. Thomas's recommendation, and that there was no need for Plaintiff to be reinterviewed.  *Id.*  Thus, even Plaintiff's revisionist arguments fail to save the grievance-procedure claim from dismissal.  At no point did SAS refuse to comply with OIEA's recommendation, and so she can claim no injury from the alleged deficiency presented by OIEA's lack of enforcement authority.

Of course, whether Defendant McKeown's reengagement adequately discharged the statutory requirement for an interactive process is a separate issue unrelated to the grievance process or Mr. Thomas's satisfaction with her response to his recommendation.

---

[4] It appears that Plaintiff mistook an email sent by Mr. Thomas on April 14, 2025, as a separate and superseding recommendation to revisit the accommodation request when it actually was just a formal memorialization of the same recommendation he'd conveyed to both Plaintiff and Defendant McKeown two weeks before.  Given the flurry of activity that occurred over a short period, the mistake was understandable.

Plaintiff is free to challenge Defendant McKeown's response within the context of her discrimination claim (and she does), but she may not challenge the grievance procedure itself.

The court turns next to the denial of the preliminary injunction.

Plaintiff first takes issue with the court's finding that she had failed to show a likelihood of success, both generally and specifically as to her failure-to-accommodate claim, arguing that the court failed to apply the correct legal standards in so finding.

As to the accusation of global misapplication of the preliminary injunction standard, Plaintiff contends that rather than requiring her to show a likelihood of success on the merits, the court ought to have used the "serious questions" standard, which requires only a showing of "serious questions on the merits and a balance of hardships decidedly favoring the moving party . . . ." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024). But it was Plaintiff's burden to show the relief she sought was warranted, *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020) ("To obtain an injunction from a district court, movants generally bear the burden of showing that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest."), and it was she who explicitly argued that she was likely to succeed on the merits of her case. The court reviewed and rejected that argument. Plaintiff never argued that she had raised serious questions on the merits of her claims, and so the court did not address the argument she did not make.

Nevertheless, in an abundance of caution, the court addresses this new argument here. Earlier in this action, the court granted Plaintiff a temporary restraining order holding

her graduation from the J.S.D. program in abeyance pending closer inspection of her claims, concluding that Plaintiff had met the lower "serious questions" threshold. ECF No. 36. But that order issued upon Plaintiff's woefully incomplete, selective, and demonstrably inaccurate portrayal of the relevant facts. As the court pointed out in the Ruling, the more fulsome factual background now before it presents a very different picture of Plaintiff's tenure in the J.S.D. program and Defendants' treatment of her during her candidacy. It is so different, in fact, as to substantially diminish the court's confidence that she can prevail upon her claims. Having reviewed hundreds of pages of exhibits and heard testimony from several witnesses and argument from competent counsel on both sides, the court no longer can conclude that Plaintiff has satisfied even the more lenient "serious questions" test.

The court reiterates that this finding should not be taken as indication that summary judgment for Defendants is a foregone conclusion. Certain aspects of their conduct certainly might well be questioned by a reasonable jury, which the court noted in the Ruling, but the questions raised by Defendants' actions are not "so serious, substantial, difficult and doubtful" as to warrant such extraordinary relief as entry of a preliminary injunction. *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 442 (2d Cir. 1977) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953)).

Next, Plaintiff asserts that the court erred in not finding that she had a sufficient likelihood of success on her failure-to-accommodate claim. This is so, she asserts, because the court did not apply the burden-shifting framework laid out in *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003). She argues that because she has identified a plausible accommodation for her disability, and because Defendants have stipulated that

7

they are not claiming any undue burden, the court ought to have found that she was likely to succeed on that claim.

However, the *Henrietta D.* burden-shifting framework is used in showing but *one* of the four elements required of a failure-to-accommodate claim. Specifically, the framework is used to evaluate whether a proposed accommodation is *reasonable*. *Henrietta D.*, 331 F.3d at 280 (determining whether certain injunctive relief constituted a reasonable accommodation.) (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). But the Ruling identified a predicate issue with Plaintiff's claim: whether she had shown, to the requisite level of likelihood, that she was denied the opportunity to participate in the J.S.D. program because of her disability. Thus, Plaintiff's argument is inapposite. The court also notes that neither *Borkowski* nor *Henrietta D.* involved a preliminary injunction. *Henrietta D.* dealt with a permanent injunction issued after completion of litigation, and *Borkowski* dealt with summary judgment (not an injunction at all). This is important because here, the court is not determining a fair remedy after Defendants have had full and fair opportunity to argue against Plaintiff's claims, nor is the court deciding whether any reasonable juror could find in Plaintiff's favor (to the contrary, the court throughout the Ruling was clear that it was *not* making any predetermination about summary judgment). Rather the court was bound to hold Plaintiff to the high bar presented by the *preliminary injunction* standard, not the low bar presented by the test for reasonableness.

But Plaintiff's argument must fail on its merits, too. Specifically, while Defendants stated at the hearing that they were not arguing that the extension would present an undue burden, they also may, and did, present persuasive argument that such an

8

additional one-year extension would be unreasonable because it is unnecessary insofar as Plaintiff already has completed the requirement for which she claims the accommodation. The court agrees with Defendants, at this point in litigation, that to allow a student to delay graduation and maintain student status despite having completed all the degree requirements would be a fundamental alteration of the program. And while the court recognizes that Plaintiff maintains that she has not completed all the program requirements, and that it previously was persuaded by her argument that she was entitled to draft a dissertation of comparable quality to that produced by nondisabled students, additional evidence has considerably weakened Plaintiff's position and the court's confidence in it. Email correspondence shows that as early as the Spring 2021 semester, long before this suit was filed, Plaintiff's advisor found her dissertation to be close to finished, needing only a few months' additional work. His comments are strong evidence that the work she produced four years later was good enough to satisfy the thesis requirement.

Thus, the court rejects the argument that Plaintiff did show a likelihood of success on her claims sufficient to warrant a preliminary injunction.

Even if Plaintiff had succeeded in changing the court's mind on that point, though, issuance of a preliminary injunction still requires a showing of irreparable harm, which the court also found lacking in the Ruling. And though Plaintiff challenges that finding, too, her arguments do not persuade the court to revise the Ruling.

First, Plaintiff again argues that any alleged civil rights violation carries a presumption of irreparable harm, although the court already has rejected that argument. She contends, though, that the court misinterpreted the case law that she cited in support

of her position.  The court notes that her proffered authority is not binding precedent, so any failure to follow it is no reason for reconsideration.

More importantly, though, Plaintiff has failed to show any misinterpretation in the first instance.   In each case Plaintiff cites, the court found that the movant adequately had established the defendant's liability (or in the case of *Hernandez v. Enfield Bd. of Educ.,* No. 3:19-CV-1907 (SRU), 2024 WL 3011177, at \*3 (D. Conn. June 14, 2024), a jury had returned a verdict affirmatively finding the defendant's liability).  *See Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*, 790 F. Supp. 1197, 1208 (D. Conn. 1992) (finding irreparable harm where the plaintiff presented *sufficient evidence* to establish a Fair Housing Act violation*); Gibson v. U.S. I.N.S.*, 541 F. Supp. 131, 136 (S.D.N.Y. 1982) (presuming irreparable injury where civil rights were *found to have been violated*).  But such is not the case here, as discussed supra.  It is dubious that any court would conclude that a bald or even a weak allegation of a civil rights violation is enough to satisfy "the single most important prerequisite for the issuance of a preliminary injunction . . . ."  *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quoting *State Farm*, 120 F.4th at 80).

Plaintiff also contends that the court inappropriately relied upon her counsel's representations at oral argument with respect to the severity of her health concerns.  Specifically, the Ruling noted that Plaintiff's counsel had conceded that she would recover from her current infirmity, thereby undermining any showing of irreparable harm.  Plaintiff argues that the court improperly took counsel's argument as evidence, and moreover that the court took it out of context.  Counsel's full statement was that Plaintiff would recover if she received the accommodations to which she is entitled.

10

But that is precisely the court's point. Plaintiff has made clear that the stress of her current circumstances will cause her health to deteriorate further. But the issuance of a preliminary injunction requires the movant to show irreparable harm *absent immediate injunctive relief*, and her counsel's argument shows that this deterioration will be reversed if she wins her case. This clearly is not *irreparable* harm, but harm that can be repaired post-verdict. From its first substantive order in this action, the court has questioned whether Plaintiff could not be made whole should she emerge victorious in this action. ECF No. 29. Counsel's statement only strengthens the court's doubts on this point. But the Ruling did not rely upon that statement in its finding that there was no showing of irreparable harm. The Ruling also pointed out that injunctive relief was not necessary to ensure continued access to healthcare or medical providers, and it noted that Plaintiff's poor health long preceded the motion for a preliminary injunction, and that the lawsuit itself would have deleterious effects thereon. Thus, the degree of harm resulting from the denial of injunctive relief was unclear. This is reason enough to find the irreparable harm element unsatisfied. *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979) ("[W]here the plaintiff establishes something less than probable success as to the merits, need for proof of the threat of irreparable damage is even more pronounced.") (quoting *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2 Cir. 1976)). Therefore, even if the court were to disregard counsel's comment entirely, its conclusions in the Ruling would remain unaltered. To be clear, the court carefully has considered Plaintiff's claims of irreparable *professional* and *medical* harm as raised thus far in this case she initiated. And while it is sensitive to the seriousness of representations that self-harm may follow

certain adverse rulings, the court is troubled by the argument that its prior articulation "would paradoxically preclude relief in every case where accommodations might ameliorate a disability's effects," for Plaintiff's arguments, taken together, almost suggest that courts always must find irreparable harm whenever a litigant pursuing injunctive relief asserts the likelihood of self-harm in the face of any prospective denial.  On this presumed point, the court disagrees and is most thankful that Plaintiff has access to treatment and has been able to remain in contact with providers and counsel even when abroad.

Accordingly, for the reasons stated herein, it hereby is **ORDERED AND ADJUDGED** that Plaintiff's request to revise the court's ruling of June 23, 2025, denying a preliminary injunction hereby is **DENIED**.  The Motion itself, ECF No. 92, is granted only insofar as the court has considered the new arguments presented therein and has rejected them.

**IT IS SO ORDERED** at Hartford, Connecticut, this 13th day of July, 2025.

_____/s/_____
OMAR A. WILLIAMS
United States District Judge